# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Minnesota Living Assistance, Inc., d/b/a Baywood Home Care,<br><br>    Plaintiff,<br><br>v.<br><br>Ken B. Peterson, Commissioner, Department of Labor and Industry, State of Minnesota, in his official capacity; and John Aiken, Interim Director of Labor Standards, Department of Labor and Industry, State of Minnesota, in his official capacity,<br><br>    Defendants. | Case No. _____<br><br><br>**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

COMES NOW Plaintiff Minnesota Living Assistance, Inc., d/b/a Baywood Home Care ("Baywood" or "Plaintiff"), for its causes of action against Defendants, alleges and states as follows:

## **PARTIES**

1. Plaintiff Minnesota Living Assistance, Inc., d/b/a Baywood Home Care ("Baywood" or "Plaintiff") is, and at all material times was, a corporation organized and existing under the laws of the State of Minnesota, with its principal place of business in Minneapolis, Minnesota.

2. Plaintiff is an "employer" as that term is defined in the Fair Labor Standards Act of 1938, as amended (the "FLSA"), and more specifically 29 U.S.C.

§ 203(d) (2015). Plaintiff is an "enterprise engaged in commerce" as term is defined in 29 U.S.C. § 203(s) (2015).

3. Plaintiff, at all times material herein, employed as domestic service workers certain individuals who were engaged in commerce. See 29 U.S.C. §§ 202(a), 203(e)(1) (2015). These employees provided "companionship services" as that term is defined in 29 U.S.C. § 213(a)(15) (2015) and in regulations promulgated by the Wage and Hour Administrator.

4. Defendant Ken B. Peterson is the Commissioner of the Minnesota Department of Labor and Industry ("DLI") and Defendant John Aiken is the Interim Director of the Labor Standards of DLI (collectively "DLI"). The DLI interprets and enforces several Minnesota statutes including Minn. Stat. §§ 177.21 through 177.35, which is entitled the Minnesota Fair Labor Standards Act (the "MFLSA").

## JURISDICTION AND VENUE

5. This is a civil action brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*. and the Fair Labor Standards Act of 1938, as amended (the "FLSA"), 29 U.S.C. §§ 201, *et seq*.

6. This Court has original jurisdiction over this action under 28 U.S.C. § 1331, relating to civil actions arising under the Constitution, laws, and treaties of the United States, and under 28 U.S.C. § 1337, relating to civil actions or proceedings arising under an Act of Congress regulating commerce. See *Verizon Maryland, Inc. v. Public Service Com'n of Maryland,* 535 U.S. 635, 642-43 (2002).

7. Venue is proper in the District of Minnesota under 28 U.S.C. § 1391(b) because the Plaintiff and Defendants reside or may be found in this judicial district and because a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## STATEMENT OF FACTS

**From 1974 to 2015, Employees Performing Companionship Services Were Exempt from Both the Minimum Wage and Overtime Compensation Provisions of the FLSA**

8. In 1974, Congress amended the FLSA to provide that certain domestic service workers, including those who provided "companionship services" were exempt from both the minimum wage and maximum hours requirements of the FLSA. See Pub. L. 93–259, § 7(b)(3), 88 Stat. 55, 62 (1974), codified at 29 U.S.C. § 213(a)(15).

9. In 1975, the Wage and Hour Administrator promulgated regulations that expressly extended the exemption to all persons who provided companionship services, including employees of third parties, such as staffing companies. See 29 C.F.R. § 552.6 (1975), 40 Fed. Reg. 7404 (Feb. 20, 1975).

10. In *Long Island Care At Home, Ltd. v. Coke,* 551 U. S. 158 (2007), the Supreme Court upheld the regulations promulgated by the Wage and Hour Administrator, who had interpreted the FLSA exemption to include third-party employers, such as staffing companies.

11. For more than 40 years after the 1974 amendments to the FLSA, the exemption from the minimum wage and overtime provisions applicable to employees who provide companionship services remained the consistent position of the Wage and

Hour Administrator, until the Administrator published new regulations to eliminate the exemption set out in section 213(a)(15) as to third parties, such as staffing companies. See 78 Fed. Reg. 60454 (October 1, 2013).

12. The new regulation was scheduled to take effect on January 1, 2015. The regulation was challenged in the U.S. District Court for the District of Columbia, which issued a temporary restraining order against the Administrator. *Home Care Ass'n of Am. v. Weil,* 76 F. Supp. 3d 138 (D.D.C. 2014), 78 F. Supp. 3d 123 (D.D.C. 2015). On appeal, however, the U.S. Court of Appeals for the District of Columbia reversed the District Court on August 21, 2015. *Home Care Ass'n of Am. v. Weil,* 799 F.3d 1084 (D.C. Cir. 2015).

The Department of Labor issued a policy statement that it would not enforce the new regulation until 30 days after the mandate issued from the Court of Appeals and that for the remainder of the year 2015 it would exercise prosecutorial discretion in enforcing the new regulation in a particular case. 80 Fed. Reg. 55029 (Sept. 14, 2015).

13. Consequently, today only employees who perform companionship services and who are employed directly by the client or customer (i.e., the person to whom the companionship services are rendered) are exempt from the minimum wage and overtime compensation provisions of the FLSA. See 29 C.F.R. § 552.6 (2016).

**Minnesota Claims to Regulate Employees who Perform "Companionship Services" and Rejects the Exemption in the FLSA.**

14. The Minnesota Fair Labor Standards Act, Minn. Stat. §§ 177.21-177.35 (2016) (the "MFLSA"), addresses the subject of companionship services.

15. In MFLSA section 177.23, subd. 11, the statute adopts and incorporates by reference the definition of "companionship services" as that term is defined in the FLSA. Specifically, section 177.23, subd. 11 provides: "For the purposes of this subdivision, the term 'companionship services' is defined in Code of Federal Regulations, title 29, sections 552.6 and 552.106 as of March 1, 1984."

16. During the period of March 21, 2012 to March 21, 2014 Baywood employed individuals who provided "companionship services," as that term is defined in the FLSA and the MFLSA, in the homes of Baywood's clients. See 29 U.S.C. § 213(a)(15) (2015) and Minn. Stat. § 177.23, subd. 11.

17. The DLI opened an investigation of Baywood based on a complaint from an employee alleging that Baywood had not paid the employee overtime compensation for hours worked in excess of 48 hours in a workweek, the maximum hours threshold set out in the MFLSA. See Minn. Stat. § 177.25, subd. 1.

18. The relevant time period for the DLI investigation (the "audit period") is March 21, 2012 to March 21, 2014, a period of time during which Baywood's employees who performed companionship services were completely exempt from the minimum wage and overtime requirements of the FLSA by virtue of 29 U.S.C. § 213(a)(15) (2015).

19. Baywood employees who provided companionship services in the homes of clients were assigned to live in the home of their clients for an entire day (24 hours) and were considered to be on duty for a period of 16 hours.

20. Baywood employees who provided companionship services received an hourly rate of pay that was at least, and usually in excess of, the FLSA minimum wage

5

rate, although they were exempt from the FLSA minimum wage rate by virtue of 29 U.S.C. § 213(a)(15) (2015).

21. The DLI contends that Baywood's employees who provided companionship services during the audit period, March 21, 2012 to March 21, 2014, did not receive overtime compensation calculated at 1.5 times their regular rate of pay for hours worked in excess of 48 hours in a workweek.

22. Based on its investigation and its interpretation of the MFLSA, the DLI has commenced a proceeding in which it seeks to assess and to collect from Baywood the sum of $557,714.44 in claimed back wages, plus liquidated damages, civil money penalties, and interest, for a total sum in excess of $1,000,000.00.

23. The DLI has commenced a proceeding pursuant to the Minnesota Administrative Procedure Act, Minn. Stat. §§ 14.001 to 14.69, the object of which is to collect the sums listed in paragraph 22 of this Complaint.

**The FLSA Preempts State Wage and Hours Laws that Impose a Lower Minimum Wage Rate or Longer Maximum Hours Threshold than the Federal Statute, and the MFLSA is Not Saved by the FLSA's "Savings Clause."**

24. The FLSA, as originally enacted in 1938 and today, includes a provision commonly known as the "Savings Clause." See 29 U.S.C. § 218(a) (2015), which provides:

> § 218. Relation to other laws
>
> (a) No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum workweek

> established under this chapter, and no provision of this chapter relating to the employment of child labor shall justify noncompliance with any Federal or State law or municipal ordinance establishing a higher standard than the standard established under this chapter. No provision of this chapter shall justify any employer in reducing a wage paid by him which is in excess of the applicable minimum wage under this chapter, or justify any employer in increasing hours of employment maintained by him which are shorter than the maximum hours applicable under this chapter.

25. Section 218(a) of the FLSA allows states to (1) require the payment to employees of a higher minimum wage than that specified in the FLSA and (2) to provide for a shorter maximum workweek (i.e., overtime threshold) than that specified in the FLSA.

26. During the relevant time period (the audit period), the minimum wage rate specified in the MFLSA was $6.15 per hour. During the same time period, the FLSA minimum wage was $7.25 per hour. See 29 U.S.C. § 206(a)(1)(C) (2015).

27. During the relevant time period (the audit period) and today, the maximum hours threshold for overtime compensation specified in the MFLSA is 48 hours in a workweek. During the same time period, the FLSA maximum hours provision was 40 hours in a workweek. See 29 U.S.C. § 207(a)(1) (2015).

28. Due to the failure of MFLSA to satisfy either of the two criteria set out in section 218(a) of the FLSA, the MFLSA is preempted by the federal statute.

29. The DLI cannot, in contravention of federal law, ignore or disregard the FLSA exemption for employees who provided companionship services to clients in Minnesota during the audit period.

30. Because the Minnesota statute satisfies neither of the two requirements of the Savings Clause, Section 218(a) does not save the state statute from preemption and precludes the state from invalidating an exemption that is provided in the FLSA.

## COUNT I
## FEDERAL FAIR LABOR STANDARDS ACT PREEMPTION

31. Baywood realleges and incorporates as if fully set out herein paragraphs 1 through 30 of its Complaint.

32. The MFLSA is preempted by the FLSA during the period March 21, 2012 through March 21, 2014 and through January 1, 2015 as to employees who performed companionship services during that time period.

33. The exemption for companionship services established by Congress in 29 U.S.C. § 213(a)(15) (2015) supersedes and cannot be rejected by a state.

34. Employees of Baywood who provided companionship services during the audit period and until January 1, 2015 are exempt from the overtime provisions of the MFLSA.

## COUNT II
## INJUNCTIVE RELIEF

35. Baywood realleges and incorporates as if fully set out herein paragraphs 1 through 34 of its Complaint.

36. The DLI's enforcement of the MFLSA against Baywood with respect to individuals employed by it to provide companionship services during the period of March 21, 2012 to March 21, 2014 (the "audit period") has caused and will cause

irreparable harm to Baywood. The State of Minnesota's interpretation and application of the MFLSA deprives Baywood of its rights under federal law.

37. Baywood is likely to succeed on the merits of its claims, because as a matter of law the MFLSA is preempted by the FLSA with respect to Baywood's employees who provided companionship services during the audit period.

38. The DLI has issued a Compliance Order and Notice of Hearing and has commenced a proceeding in which it seeks to enforce the MFLSA's overtime provisions against Baywood as to employees who were employed to provide companionship services during the audit period.

39. If an injunction is not issued, Baywood's federal rights will be violated, and it will be forced to expend valuable time and resources defending the DLI's attempts to enforce the MFLSA with respect to its employees who provided companionship services during the audit period.

40. The balance of hardship clearly favors Baywood. Baywood requests that this Court issue an Order ordering the DLI from further processing, investigating or adjudicating MFLSA claims against Baywood with respect to its employees who provided companionship services to clients during the audit period.

41. An injunction in this case will serve the public interest of preventing the enforcement of inconsistent state regulation related to individuals who provide companionship services in deference to the provisions of the FLSA.

42. The DLI's efforts to enforce the MFLSA against Baywood with respect to individuals employed by it to provide companionship services to clients during the audit

period has caused and will continue to cause Baywood irreparable harm so as to warrant an order of a preliminary injunction and a permanent injunction. Such an order will maintain the status quo until the federal courts can decide the issue of FLSA preemption of the MFLSA.

**WHEREFORE**, Baywood prays as follows:

A. For a declaration and judgment that the Minnesota Fair Labor Standards Act, specifically Minn. Stat. § 177.23, subd. 11 and regulations promulgated by the Minnesota Department of Labor and Industry pertaining to employees who provided companionship services during the period March 21, 2012 through March 21, 2014 and through January 1, 2015, are preempted by the Fair Labor Standards Act of 1938 and that such employees exempt from the overtime compensation provisions of the MFLSA during the same time period.

B. For a preliminary and permanent injunction directing that the DLI cease and desist from its efforts to enforce against Baywood the MFLSA overtime provisions as to employees who performed companionship services during the period March 21, 2012 through March 21, 2014 and through January 1, 2015.

C. That the Court award to Baywood its reasonable attorneys' fees, costs, and such other relief as appears to the Court to be just and proper in the premises.

Dated:  March 31, 2017						Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P. C.


*s/ Bruce J. Douglas*
Bruce J. Douglas, MN #023966
Stephanie J. Willing, MN #0393369
Wells Fargo Center
90 South Seventh Street, Suite 3800
Minneapolis, MN  55402
Telephone:  612.339.1818
Facsimile:  612.339.0061
bruce.douglas@ogletreedeakins.com
stephanie.willing@ogletreedeakins.com

**Attorneys for Plaintiff**
**Minnesota Living Assistance, Inc.,**
**d/b/a Baywood Home Care**

## VERIFICATION

I, Dorothy Muffett, am the President of Minnesota Living Assistance, Inc., which does business under the name Baywood Home Care. I have read the foregoing Complaint, know its contents, and believe the same to be true and correct, except as to such matters stated upon information and belief, and as to such matters I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 29, 2017, at Minneapolis, Minnesota.

_____
Dorothy Muffett

29043855.3