UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Minnesota Living Assistance, Inc., d/b/a Baywood Home Care,<br><br>    Plaintiff,<br><br>v.<br><br>Ken B. Peterson, Commissioner, Department of Labor and Industry, State of Minnesota, in his official capacity; and John Aiken, Interim Director of Labor Standards, Department of Labor and Industry, State of Minnesota, in his official,<br><br>    Defendants. | Case No. 0:17-cv-01011-DSD-DTS<br><br><br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Minnesota Living Assistance d/b/a Baywood Home Care ("Baywood") provides "companionship" services to individuals who are elderly, infirm, often living alone, and who have no immediate family members who are able or available to spend time with them. Companions engage in activities such as reading to their clients, accompanying them on shopping trips, doctors' appointments, worship services, and other daily activities in and about the client's home. The companions often reside in their clients' homes on a 24-hour basis, sometimes up to six or seven days each week, and are scheduled for eight hours of rest and personal time each day.

The Minnesota Department of Labor and Industry (DLI) commenced an investigation and subsequent contested case asserting that Baywood failed to properly

1

pay overtime compensation to its companion employees under the Minnesota Fair Labor Standards Act (MFLSA), after 48 hours in a workweek.

The relevant time period for this proceeding is March 21, 2012 to March 21, 2014, which is the "audit period" during which the DLI claims additional wages are owed to certain employees. During the audit period, the minimum wage under the MFLSA was $6.15 per hour, and the maximum hours threshold for overtime was 48 hours in a workweek. During the same time period, however, the federal minimum wage was $7.25 per hour and the maximum hours threshold for overtime was 40 hours in a workweek under the Fair Labor Standards Act of 1938 (FLSA).

More to the point, during the audit period and beyond, specifically from 1974 to January 1, 2015, companions employed by third parties like Baywood Home Care were exempt from both the minimum wage and overtime provisions of the FLSA. 29 U.S.C. §213(a)(15) (2012).

In enacting the FLSA, Congress sought to regulate on a national basis minimum wages and maximum hours and other matters to the full extent of the Commerce Clause of the U.S. Constitution. As a result, the statute applicable to Baywood's companions during the audit period on these subjects is the FLSA. Congress afforded the states the opportunity to avoid the preemptive effect of the FLSA and to take part in regulating wages and hours by adopting a Savings Clause, 29 U.S.C. §218(a), which allows the states to establish a *higher* minimum wage or a *lower* maximum workweek than that provided in the FLSA.

During the audit period, however, the MFLSA met neither exception to preemption – the MFLSA minimum wage was lower and the statute's maximum hours threshold was higher than that established in the FLSA. Consequently, based on the Supremacy Clause of the U.S. Constitution, the FLSA supersedes state laws that establish lower minimum wages or higher maximum hours as to those employees and employers to whom Congress has extended federal regulation.

Baywood has moved for summary judgment on the ground that Section 18(a) of the FLSA, 29 U.S.C. §218(a), preempts the MFLSA, and that Baywood's compliance with the federal statute leaves no room for further state regulation in this case. The goal of the FLSA was to establish a floor below which states could not set their own minimum wage and a ceiling above which the states could not set their own maximum hours requirements. The failure of the MFLSA to meet either criterion set out in §218(a) does not save the state law from federal preemption by the FLSA.

## II.  STATEMENT OF MATERIAL FACTS

Baywood provides non-medical assistance with activities of daily living to elderly Minnesotans and others in need of assistance to mitigate the necessity of moving to assisted living. Declaration of Dorothy Muffett ¶2.[1] Baywood also provides companionship services, which is a form of assistance to persons such as assistance with meals, dressing, reading, playing games together, traveling to medical appointments or to public places such as retail stores or public events, but does not include medical care.

---

[1] The Declaration of Dorothy Muffett will be cited as "Muffett Decl. ¶__."

Muffett Decl. ¶3. Companions reside in the home of clients for a period of up to 24 hours per day. Verified Complaint. ¶19. Companion services are not covered by government aid programs and or by traditional insurance. Muffett Decl. ¶4. Some separate, long-term care insurance plans cover a portion of the cost of companionship services, but only if the client has dementia or must have help with at least two activities of daily living, such as eating and dressing. *Id.* If a client has long-term care insurance but only requires help for one activity of daily living, their long-term care insurance will not cover companionship services. *Id.*

### III.  ARGUMENT

Plaintiff is entitled to summary judgment if, when the evidence is viewed in the light most favorable to Defendants, there are no genuine issues of material fact and Plaintiff is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Defendants, as the nonmoving parties, may not rest upon mere denials or allegations in the pleadings. Fed. R. Civ. P. 56(e)(2). "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *EEOC v. KCD Constr., Inc.*, No. 05-2122-DSD-SRN, 2006 WL 549393, at *1 (D. Minn. Mar. 6, 2006) (quoting (*Adams v. Boy Scouts of Am.-Chichawaw Council*, 271 F.3d 769, 775 (8th Cir. 2001)).

**A.   The Minnesota FLSA does not meet the requirements of the FLSA's Savings Clause and is preempted.**

The Constitution's Supremacy Clause establishes that Congress has the power to preempt state law. U.S. Const. art. VI, cl. 2. The FLSA rests on Congress's Commerce Clause power. U.S. Const. art. I, sec. 8, cl. 3. *Garcia v. San Antonio Metropolitan Transit*

*Authority Donovan v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 533 (1984); *Citicorp Industrial Credit, Inc. v. Brock,* 483 U.S. 27, 39 (1987).

The inquiry into whether Congress has preempted a state law focuses on congressional intent. *English v. General Elec. Co.*, 496 U.S. 72, 78-79, 110 S. Ct. 2270, 110 L.Ed.2d 65 (1990). Federal courts have recognized three categories of preemption: express preemption, field preemption, and conflict preemption. *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 589 F. Supp. 2d 1026, 1030 (E.D. Wis. 2008). This case presents questions of express preemption and conflict preemption.

It is clear that Congress, in enacting the FLSA, intended to legislate to "utmost extent" of the Commerce Clause and to regulate minimum wages, maximum hours, child labor, and related matters on a national basis. *U.S. v. Wrightwood Dairy Co.*, 315 U.S. 110, 119 (1942). "As the legislative history demonstrates, this phraseology was deliberately chosen to conform to that adopted in the opinion in the Schechter case [*Schechter Poultry Corp. v. U.S.*, 295 U.S. 495 (1935)], as signifying the full reach of the commerce power, and with the avowed purpose of conferring on the Secretary authority over intrastate products to the full extent of that power. See 79 Cong. Rec. 9478 and S. Rep. No. 1011, p. 8, H. Rep. No. 1241, p. 8, 74th Cong., 1st Sess." *Id.* at 123.

The FLSA contains what is referred to as a Savings Clause. This provision of the FLSA carves out an exception for state regulation that allows states to enact laws providing for <u>higher</u> minimum wages and <u>shorter</u> maximum workweeks than are specified in the FLSA. The Savings Clause provides in relevant part:

5

> No provision of this chapter or of any other thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum workweek established under this chapter.

29 U.S.C. §218(a).

This Savings Clause is not a general grant to states to regulate wages and hours in a way that differs from the goals of the FLSA. Rather, Congress chose two distinct aspects of the employment relationship, out of everything the FLSA addressed, where the states would be allowed to impose higher standards for minimum wages and maximum hours than those established in the FLSA. Notably, in the same Savings Clause, Congress addressed the subject of child labor, and granted the states greater leeway to adopt higher standards without delimiting those standards. This is not the case with the section's treatment of the minimum wage and maximum hours regulatory boundaries left to the states.

We begin with the plain language of the statute. Section 218(a) is explicit: a state may set a *higher* minimum wage and a *shorter* maximum workweek. When construing a statute, "words will be interpreted as having their ordinary, contemporary, common meaning." *Hennepin County v. Federal Nat. Mortg. Ass'n*, 933 F. Supp. 2d 1173, 1176 (D. Minn. 2013) (quoting *United States v. Friedrich*, 402 F.3d 842, 845 (8th Cir. 2005)). Another statutory construction canon explains that expressing one thing excludes others not expressed. *Id.* Here, the plain language of the Savings Clause does not generally exempt more favorable state statutes, it specifically exempts those where the minimum

6

wage is higher or the maximum hours are lower. By setting out two situations when state statutes are saved from preemption, it therefore does not allow state statutes to be saved from preemption in other situations. A contrary interpretation ignores the plain language of the statute.

In the relevant timeframe, March 2012 to March 2014 (the audit period), the federal minimum wage was $7.25 per hour, and the federal maximum workweek was 40 hours. 29 U.S.C. §206 (a)(1)(C), §207(a)(2)(C). Minnesota's minimum wage was $6.15 an hour, Minn. Stat. §177.24, subd. 1(b) (2012) (2011 Minn. Laws. ch. 105, s.1), and stayed at $6.15 an hour until August 1, 2014, Minn. Stat. §177.24, subd. 1(b)(1)(i) (2014) (2014 Minn. Laws ch. 166, s. 2). Minnesota's maximum workweek was, and still is, 48 hours. Minn. Stat. §177.25. Therefore, in 2012 and until August 1, 2014, the FLSA expressly preempted the MFLSA because the FLSA had the higher minimum wage and shorter maximum workweek. Federal courts applying the preemptive force of the FLSA and its Savings Clause have recognized that "it is clear that the FLSA would preempt only state laws that mandated lower minimum wages or longer maximum workweeks." *Barrus v. Dick's Sporting Goods, Inc.*, 732 F. Supp. 2d 243, 257 (W.D.N.Y. 2010); *cf. DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 589 F. Supp. 2d 1026, 1031 (E.D. Wis. 2008).

When the FLSA was enacted, Congress intended for its minimum wage and maximum hours provisions to set a floor for the entire country, but hoped that states would eventually fall into line and enact the same, if not higher minimum wages over time. H.R. Rep. No. 2182, 75th Cong., 3d Sess., at 7 (1938), *reprinted in* 1 Fair Labor Standards Act 1, 6 (1938). Congress intended for no employer in any industry to be

required by law to observe higher wage and hour standards than their competitors. *Id.* at 6-7. Thus, by limiting the FLSA's Savings Clause to two specific criteria, Congress furthered its goals of uniformity and forcing the states to legislate in accordance with the FLSA or be preempted.

    **B.    Cases construing the Savings Clause to require only a better result ignore the language of the statute and, in any event, are not binding on this Court.**

Proceeding along a different path, and one that glosses over the plain language of the Savings Clause, some courts have construed §218(a) not to preempt state wage and hour laws if the result under the state law is more favorable to the employee than would be the case under the FLSA. These decisions, however, not only ignore the express language of the Savings Clause, they are distinguishable from the instant case. First, a number of cases have examined whether a state and federal claim may coexist in the same action and have held that the state remedial scheme is not preempted by the FLSA. Most of these cases involve state causes of action that are parallel to or duplicative of the FLSA, not state laws that directly contradict provisions of the FLSA. *See e.g. Fry v. Accent Marketing Servs. LLC*, 2013 WL 2403669 (E.D. Mo. 2013) and *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870 (N.D. Iowa 2008), *aff'd on other grounds*, *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016), (holding the FLSA does not preempt duplicative state law claims).

Second, some cases have examined whether a Rule 23 opt-out class action may be brought in the same action as a FLSA "opt in" collective action under 29 U.S.C. §216(b). Those cases have found no FLSA preemption, but they are not pertinent to the case at

bar. *See e.g. Ervin v. OS Restaurant Services, Inc.*, 632 F.3d 971 (7th Cir. 2011); *Thorpe v. Abbott Laboratories, Inc.*, 534 F. Supp. 2d 1120 (N.D. Cal. 2008).

While one may question the courts' reading of §218(a) in those cases, it is critical to note that the applicable state laws fell within at least one, and usually both, of the parameters of the Savings Clause: the state minimum wages were equal to or above the federal minimum wages[2] and none of the states' laws provided for a longer maximum workweek. Minnesota is one of the few states during the audit period with a minimum wage that fell below the federal, and the only state that also set its maximum hours threshold above that specified in the FLSA. So while these other state laws satisfied the requirements of the Savings Clause, Minnesota satisfied neither requirement.

Finally, some courts have considered whether the end result under the state law, regardless of the state's minimum wage or overtime hours threshold, yields a better result to the employee who is otherwise exempt under the FLSA. *See, e.g., Williams v. W.M.A. Transit Co.*, 472 F.2d 1258, 1263 (D.C. Cir. 1972). Those courts have found no preemption, but those decisions misread the plain language of the Savings Clause and ignore Congress's purpose in establishing national standards for certain occupations.

In *In re Daley Farm of Lewiston*, 816 N.W.2d 671, 674 (Minn. Ct. App. 2012), the Minnesota Court of Appeals applied the MFLSA to certain farm workers, who otherwise were exempt from the FLSA's overtime requirements based on the agricultural worker

---

[2] *See* U.S. Department of Labor, Changes in Basic Minimum Wages in Non-Farm Employment Under State Law: Selected Years 1968 to 2016, https://www.dol.gov/whd/state/stateMinWageHis.htm (last visited May 2, 2017).

exemption. 29 U.S.C. §213(b)(12). The Court of Appeals considered whether the federal exemption preempted the state law and concluded that it did not because the end result was better for the employee. *Id.* at 674 (citing to a footnote in *Milner v. Farmers Inc. Exch.*, 748 N.W.2d 608 (Minn. 2008)). But, the precise provision of the MFLSA at issue was Minn. Stat. §177.23, subd. 7(2), which excluded from the definition of "employee" only "any individual employed in agriculture on a farming unit or operation who is paid a salary greater than the individual would be paid if the individual worked 48 hours at the state minimum wage plus 17 hours at 1-1/2 times the state minimum wage per week." The critical factor for the employees in the *Daley Farms* case, the state's minimum wage for those farmer workers *exceeded* the FLSA minimum wage at that time. Since the state minimum wage, as to those farm workers, was higher than the FLSA minimum wage, the MFLSA satisfied at least one criterion of the Savings Clause. Accordingly, it was unnecessary to consider whether the federal overtime exemption applied as the workers in that case were required to be paid a guaranteed salary far in excess of the FLSA minimum wage, and the employer had failed to do so. Thus, the court's statement is properly viewed as *obiter dictum.* In any event, a federal court is not bound by a state court's interpretation or construction of a federal statute or a provision of the U.S. Constitution. *James v. City of Boise,* 136 S. Ct. 685 (2016); *Crosswhite v. Swenson,* 444 F.2d 648, 650 (8th Cir. 1971).[3]

---

[3] Respectfully, the Minnesota Court of Appeals' reliance on several federal courts of appeals decisions was misplaced. In those cases, the issue was whether a state law class action claim could coexist with a FLSA §216(b) collective action. See *Shahriar v. Smith & Wollensky Rest. Grp., Inc.,* 659 F.3d 234 (2d Cir. 2011); *Williams v.*

10

**C.     Congress exempted companions from the minimum wage and overtime provisions of the FLSA. Minnesota cannot reject or refuse to recognize this exemption applicable to companions during the relevant time period. The DLI's attempt to apply the MFLSA conflicts with the FLSA.**

The 1974 amendments to the FLSA extended its coverage to certain employees who perform domestic service, but at the same time it determined that "companions" would be exempt from both the minimum wage and overtime compensation provisions of the statute. Pub. L. No. 93-259, § 13(a), Apr. 8, 1974, 88 Stat. 61-69, 72 (1974) (codified at 29 U.S.C. §213(a)(15)). As a result, the FLSA exempted "any employee employed in domestic service employment to provide companionship services for individuals (because of age or infirmity) are unable to care for themselves" from the minimum wage and maximum hour statutes. 29 U.S.C. §213(a)(15) (2012). In 1974, Congress understood that most companions were hired and paid directly by the client while others were employed by third parties.[4] Acting within his delegated authority, the Wage and Hour Administrator promulgated regulations that confirmed this exemption and extended it to third parties and agencies such as Baywood. See 29 C.F.R. §552.109 (2012).[5] The U.S.

---

*W.M.A. Transit Co.,* 472 F.2d 1258 (D.C. Cir. 1972). Also, in those cases, the state or District of Columbia wage and hour laws provided either the same or a higher minimum wage and overtime after 40 hours in a workweek. The Court of Appeals appears to have given no consideration to the fundamental failure of the MFLSA to satisfy either criterion in §218(a).

[4] Legislative History of the Fair Labor Standards Act of 1974 P.L. 93-259 88 Stat. 55 56 April 8 1974, at 32-33 (1974).

[5] The regulations in 29 C.F.R. §552.6 (2012) defined companionship services as follows: "As used in section 13(a)(15) of the Act, the term 'companionship services' shall mean those services which provide fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or

11

Supreme Court upheld the regulations and ruled that the Administrator had acted properly within his statutory authority. *Long Island Care At Home v. Coke,* 551 U.S. 158 (2007).

The complete exemption for companions furnished by a third party remained the considered judgment of Congress and the Wage and Hour Administrator for more than 40 years until January 1, 2015 (after the audit period), when revised regulations became effective and limited the companions' exemption to persons who are employed directly by the client.[6] It is worth noting the persons whom these companions serve: the elderly, the infirm, persons who may have no family members nearby or living who can spend time with them. And, companion services not paid for by government aid programs or traditional insurance, and even long-term care insurance only pays in certain situations, and even then only a portion of the cost. Muffett Decl. ¶4. While this represents a choice

---

her own needs. Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services. They may also include the performance of general household work: Provided, however, that such work is incidental, i.e., does not exceed 20 percent of the total weekly hours worked. The term 'companionship services' does not include services relating to the care and protection of the aged or infirm which require and are performed by trained personnel, such as a registered or practical nurse. While such trained personnel do not qualify as companions, this fact does not remove them from the category of covered domestic service employees when employed in or about a private household." This definition was incorporated by reference in Minn. Stat. §177.23, subd. 11 (2017). There is no dispute in this case that Baywood's employees met this definition.

[6] The regulations were slated to go into effect in January 2015, but on December 22, 2014, the U.S. District Court for the District of Columbia enjoined the regulations. *Home Care Assn. of Am. v. Weil*, 76 F. Supp. 3d 138 (D.D.C. 2014). The U.S. Court of Appeals for the District of Columbia reversed the district court on August 21, 2015. *Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084 (D.C. Cir. 2015). While the regulations still had an effective date of January 1, 2015, the Department of Labor did not begin enforcing them until November 12, 2015.

among competing interests – companions or their clients – it is one that Congress and the Wage and Hour Administrator were empowered to make. Any attempt by the MFLSA to apply any minimum wage and maximum hour requirements to companions during the time period when the FLSA exemption applied to Baywood's employees contravenes Congressional intent, conflicts with the FLSA, and makes it more difficult for those who need companion services to remain in their homes. Minnesota and its DLI are not free to intrude into that decision under the authority of the Savings Clause as the MFLSA did not at any time during the relevant time period satisfy its requirements, which must be strictly construed. *See United States v. Locke*, 529 U.S. 89, 106 (2000) ("We decline to give broad effect to saving clauses where doing so would upset the careful regulatory scheme established by federal law.").

The principle of conflict preemption applies to give supremacy to a federal law if the "state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Qwest Corp. v. Minnesota Pub. Utilities Comm'n*, 684 F.3d 721, 726 (8th Cir. 2012). In that case, while construing another statute, the court explained that when Congress creates a statutory scheme, even if it leaves a role for the states in that scheme, "the scope of that role is measured by federal, not state law." *Id.* at 727-28. In this case, the FLSA completely exempted companions. Here, the DLI's attempt to use the MFLSA to require the payment of overtime to the companions after 48 hours in a workweek is an obstacle to what Congress sought to accomplish when it exempted companions. Congress and the Wage and Hour Administrator were explicit when they established a complete exemption from the FLSA's requirements of the

13

minimum wage and maximum hours, and that exemption preempts the MFLSA requirements to the contrary.

As the U.S. Supreme Court explained in *U.S. v. Locke*, 529 U.S. 89 (2000), the preemption analysis also focuses on whether Congress is legislating in an area the states have traditionally occupied. In this case, however, the federal government was the first to regulate maximum hours, so there is no presumption (or "assumption") that Minnesota was there first and its laws on maximum hours should not be preempted. *See id.* at 108. Although Minnesota addressed the subject of minimum wages in 1921, Minn. Stat. §177.01 to 177.20 (1921), the original law had nothing to do with maximum hours. When the FLSA was enacted in 1938, the federal government made the first strides in setting a maximum workweek. Minnesota finally caught up federal law when the MFLSA was enacted in 1973, yet it has provided for a longer maximum workweek than is provided in the FLSA.

The question whether a state may reject a FLSA exemption and apply its own laws has been considered by the federal courts. Although a panel majority of the Ninth Circuit in *Pacific Merchant Shipping Ass'n v. Aubry,* 918 F.2d 1409 (9th Cir. 1990), declined to hold that the FLSA preempted state labor and wage and hour laws, as to seamen operating in inter-coastal waters, the dissenting opinion in that case hews more closely to the language of the FLSA and to the intent of Congress:

> The employers contend that state overtime regulations are not only preempted by federal admiralty law, but by the FLSA. The District Court found this argument "much more persuasive" than the preemption argument under federal admiralty law. 709 F. Supp. at 1524.

14

Section 207(a) of the FLSA provides overtime pay for employees who are engaged in "commerce or in the production of goods of commerce." The district court concluded that because the employees are tied closely enough to commerce in that they are involved in the oil production industry, they are covered by this section of the FLSA. *Wirtz v. Intravaia,* 375 F.2d 62, 65 (9th Cir.), cert. denied, 389 U.S. 844, 88 S. Ct. 90, 19 L.Ed.2d 110 (1967); see also 29 U.S.C. Section 206(a)(4) (expressly applying minimum wage requirements to seamen).

The inclusion of seamen within the ambit of the FLSA is complicated by two other provisions of the Act. The first is 29 U.S.C. Section 213(b)(6) which exempts seamen from the FLSA's overtime compensation provisions. The District Court concluded that this specific exclusion of seamen from the overtime provisions further supported the argument that states were preempted from applying their overtime regulations to seamen such as the ones in this case. The district court stated:

> Congress has spoken directly on the issue of overtime pay for seamen. Therefore, California labor laws are preempted to the extent that they presume to regulate FLSA exempt seamen, both on the high seas and within the territorial zone. Further, given Congress' exemption of these seamen from even minimal federal overtime provisions, it would be at odds with the federal scheme to permit the states to enforce stricter overtime provisions via the FLSA's savings clause.

709 F. Supp. at 1525. This conclusion seems not only logical, but the only reasonable inference that could be drawn from Congress' explicit exemption of seamen from the overtime provisions of the FLSA.

The employees and the United States argue that this conclusion is unreasonable in light of the savings provision of the Act and cases which discuss that savings provisions. The provision states:

> No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum

15

> wage higher than the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under this chapter.
>
> 29 U.S.C. Section 218(a). The employees and the United States claim that this provision clearly shows congressional intent to allow the states to set more generous overtime rates, even for seamen, than those established by the FLSA. While this argument seems on the surface to have some merit, it is weak in light of Congress' specific exemption of seamen from the overtime provisions already found in the FLSA. It is reasonable to conclude that seamen are exempt from mandatory overtime provisions and that Congress did not intend to leave the matter to the states to set overtime provisions for maritime employees on the high seas. As was concluded by the district court, "in light of the obvious conflict between California's overtime compensation provision and the FLSA, the FLSA preempts California's provision." 709 F. Supp. at 1525.

*Id.* at 1428-30.

This cogent analysis of §218(a) was echoed more recently by the district court in *Coil v. Jack Tanner Co. Inc.*, 242 F. Supp. 2d 555 (S.D. Ill. 2002). Rejecting the reasoning of the panel majority in *Aubry* (noting that it was not bound by that court's decision), the court held that the FLSA exemption for seamen indeed preempted the state's attempt to regulate seamen. The court observed that the state had attempted to enter "into a realm in which Congress has taken specific action." *Id.* at 559. Relying on the Supreme Court's decision in *U.S. v. Locke*, 529 U.S. 89 (2000), which post-dated *Aubry* by a decade, the *Coil* court found strong support for a narrow reading of the scope of the Savings Clause:

> Finally, the Supreme Court decision in *United States v. Locke*, 529 U.S. 89, 120 S. Ct. 1135, 146 L. Ed. 2d 69 (2000) demonstrates that the savings clause in the FLSA does not

16

> permit states to eliminate the seamen exception and that any holding to the contrary is inapplicable. In *Locke*, the Supreme Court was faced with a similar savings clause when it preempted the State of Washington's regulation of tanker vessels. *Id.* at 106, 120 S. Ct. 1135. "Limiting the saving clause as we have determined respects the established federal state balance in matters of maritime commerce between the subjects as to which the states retain concurrent powers and those over which the federal authority displaces state control." *Id.* The Court found it "quite unlikely that Congress would use a means so indirect as the savings clause ... to upset the settled division of authority by allowing states to impose additional unique substantive regulation on the ... conduct of vessels." *Id. Locke* held that a savings clause should not be read more broadly than is indicated by its placement and text, and expansive reading of preemption savings clauses is particularly inappropriate in maritime matters, "where doing so would upset the careful regulatory scheme established by federal law." *Id.*
>
> Here, Defendants and Plaintiffs agree that the savings clause permits the states to be more generous in two specific ways— states can create a higher minimum wage or shorter maximum workweek. 29 U.S.C.A. § 218. However, nothing in the savings clause of the FLSA authorizes the states to eliminate the seamen exemption. The Court finds that the FLSA preempts the Illinois Minimum Wage Law, 820 ILCS 105/3. Therefore, Plaintiffs are not entitled to overtime pay.

*Id*. at 561.

Likewise, Minnesota cannot reject the FLSA's exemption of company workers, as Congress has specifically acted to exempt them from minimum wage and overtime standards. A federal statutory exemption may not be rejected by a state under §218(a) – especially when that state's laws fail to meet the *sine qua non* criteria for application of the Savings Clause. Minnesota is not furthering the goals of the FSLA by regulating companions, it is outright rejecting them. During the relevant time period, Minnesota's

17

minimum wage was lower and maximum hours were higher than the FLSA, further demonstrating Minnesota's complete disregard of Congressional intent.

Simply rejecting a federal minimum wage or overtime exemption is not the same as actually enacting more favorable legislation that provides for a higher minimum wage or shorter workweek for overtime purposes. To support the DLI's position in this case would allow a state to maintain a minimum wage of $2.00 per hour and maximum hours at 60 hours per week, disallow a federal exemption under 29 U.S.C. §213 and assert that the state's standards govern.[7] If the state could reject the federal exemption by arguing that it has chosen to regulate concerning such occupations, it would do nothing to advance higher wages or shorter workweeks – two of the core purposes of the FLSA.

## IV.   CONCLUSION

The federal Fair Labor Standards Act exempted companions from its minimum wage and overtime provisions during the relevant time period in this case. The DLI's attempt to apply the provisions of the MFLSA to companions to require the payment of overtime after 48 hours in a workweek conflicts with that exemption. The Minnesota statute is not saved from federal preemption by the FLSA Savings Clause, 29 U.S.C. §218(a), because during the relevant time period the MFLSA minimum wage was *lower*

---

[7] Similarly, in the case of salaried exempt employees, the MFLSA contains an exemption for so-called "white collar" occupations as does the FLSA. See Minn. Stat. §177.23, subd. 7(6). But, regulations promulgated by the Commissioner set the required weekly salary at levels far below that set by the FLSA regulations. Compare Minn. R. §§5200.0180, 5200.0190, 5200.0200, 5200.0210 with 29 C.F.R. part 541.

than the federal minimum wage and its maximum workweek overtime threshold was 48 hours, which is *higher* than the FLSA's overtime threshold.

A state may not regulate minimum wages or overtime compensation merely by rejecting a federal exemption provided by the FLSA when its statute fails to meet both criteria of the Savings Clause. To permit such action by a state would frustrate the Congressional goals of making the FLSA a floor and not a ceiling and destroy the uniform treatment of certain categories of employees contemplated by the federal statute. In this case, the deficiency of the MFLSA is confined to a determinate period of time and to a single classification of employees employed by staffing companies, who then enjoyed the FLSA exemption. At present, the MFLSA's minimum wage is higher than that provided in the FLSA although the state's maximum hours overtime threshold remains 48 hours. The Minnesota Legislature could cure that deficiency if it chooses to do so.

In the final analysis, it is the language of the statute enacted by Congress that must be enforced. Section 218(a)'s plain language compels the conclusion that the MFLSA was preempted as to Baywood during the audit period of March 2012 to March 2014. Accordingly, this Court should grant Baywood's motion and declare the MFLSA preempted as to the companions it employed during the audit period.

Dated:  May 8, 2017

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P. C.

*s/ Bruce J. Douglas*
Bruce J. Douglas, MN #023966
Stephanie J. Willing, MN #0393369
Wells Fargo Center
90 South Seventh Street, Suite 3800
Minneapolis, MN  55402
Telephone:  612.339.1818
Facsimile:  612.339.0061
bruce.douglas@ogletreedeakins.com
stephanie.willing@ogletreedeakins.com

**Attorneys for Plaintiff**
**Minnesota Living Assistance, Inc.,**
**d/b/a Baywood Home Care**

29096285.5