UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 17-1011 (DSD/DTS)

Minnesota Living Assistance,
Inc., d/b/a Baywood Home Care,

       Plaintiff,

v.                                                               **ORDER**

Ken B. Peterson, Commissioner,
Department of Labor and Industry,
State of Minnesota, in his official
capacity; and John Aiken, Interim
Director of Labor Standards,
Department of Labor and Industry,
State of Minnesota, in his official
capacity,

       Defendants.

    Bruce J. Douglas, Esq., Stephanie J. Willing, Esq. and Ogletree, Deakins, Nash, Smoak & Stewart, P.C., 90 South Seventh Street, Suite 3800, Minneapolis, MN 55402, counsel for plaintiff.

    Jonathan D. Moler, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 900, St. Paul, MN 55101, counsel for defendants.

This matter is before the court upon the motions to dismiss by defendants Ken B. Peterson and John Aiken[1] and for summary judgment by plaintiff Minnesota Living Assistance, Inc. d/b/a Baywood Home Care (Baywood).  Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants

---

[1] Peterson and Aiken are sued in their official capacities as Commissioner for the Minnesota Department of Labor and Industry and Interim Director of Labor Standards for the Minnesota Department of Labor and Industry.  Although Aiken is sued as Interim Director, he is actually the Director.

defendants' motion to dismiss and denies plaintiff's motion for summary judgment.

**BACKGROUND**

Baywood is a Minnesota corporation that employs domestic service workers who provide companionship services as defined under the Federal Labor Standards Act (FLSA).[2]  Compl. ¶¶ 1, 3.  The FLSA establishes a minimum wage of $7.25 an hour and a maximum workweek of forty hours, after which employers must pay workers one and one-half times their regular hourly pay.  See 29 U.S.C. §§ 206(a)(1)©, 207(a)(1).  Workers who perform companionship services, however, are exempt from the minimum wage and weekly maximum hour requirements.  See 29 U.S.C. § 213(a)(15).  Unlike the FLSA, the MFLSA subjects companionship services to minimum wage, maximum weekly hours, and overtime requirements.  See Minn. Stat. § 177.23, subdiv. 11.

Based on a complaint by a Baywood employee, the Minnesota Department of Labor and Industry (DLI) investigated whether Baywood unlawfully withheld overtime compensation for companionship

---

[2] "[C]ompanionship services means the provision of fellowship and protection for an elderly person or person with an illness, injury, or disability who requires assistance in caring for himself or herself."  29 C.F.R. § 552.6(b).  The Minnesota Fair Labor Standards Act (MFLSA) adopts the FLSA definition of companionship services.  See Minn. Stat. § 177.23, subdiv. 11.

2

services employees from March 21, 2012, to March 21, 2014.[3]  Compl. ¶¶ 17-18.  After its investigation, on May 17, 2016, DLI assessed a penalty of $1,000 for failure to keep records pursuant to Minn. Stat. § 177.30 and ordered Baywood to pay back wages of $557,714.44 in addition to liquidated damages of $557,714.44.  Compl. ¶ 22; Moler Aff. Ex. A.  Baywood objected to the penalties, and DLI brought a contested case proceeding at the Minnesota Office of Administrative Hearings before an Administrative Law Judge (ALJ).[4]  Compl. ¶ 23; Moler Aff. Ex. B.

On May 31, 2017, Baywood brought this suit seeking a declaration that the FLSA preempts the MFLSA and injunctive relief prohibiting DLI from further processing, investigating, or adjudicating its claims against Baywood.  Defendants now move to dismiss the complaint arguing that the court should abstain from exercising jurisdiction under Younger v. Harris, 401 U.S. 37 (1971).

---

[3] It is unclear when the complaint was made or the investigation began.

[4] On June 1, 2017, the ALJ recommended that the Commissioner grant DLI's motion for summary disposition regarding unpaid overtime wages.  See Moler Aff. II Ex. A.  Baywood may file exceptions with DLI within ten days, and the Commissioner has ninety days to issue a final decision.  See Minn. Stat. §§ 14.61-62.

**DISCUSSION**

**I.   Younger Abstention Doctrine**

Under the Younger abstention doctrine, "federal courts should abstain from exercising jurisdiction when (1) there is an ongoing state proceeding, (2) which implicates important state interests, and (3) there is an adequate opportunity to raise any relevant federal questions in the state proceedings." Plouffe v. Ligon, 606 F.3d 890, 892 (8th Cir. 2010) (citing Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982)). The parties do not dispute that the first and third elements are met. Baywood argues, however, that Younger abstention does not apply because an important state interest is not implicated. Specifically, Baywood contends that an important state interest cannot exist when the state law the underlying proceeding seeks to enforce is preempted by federal law.

Baywood's argument is based, in part, on dicta in New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans, 491 U.S. 350 (1989) (NOPSI), where the "Supreme Court left open the possibility of an exception to Younger for preemption claims that are facially conclusive." Cedar Rapids Cellular Tel., L.P. v. Miller, 280 F.3d 874, 880 (8th Cir. 2002) (internal quotation marks and citation omitted); see also NOPSI, 491 U.S. at 367 (emphasis in original) ("[N]OPSI argues [that] ... even if a substantial claim of federal pre-emption is not sufficient to render abstention

inappropriate, at least a <u>facially conclusive</u> claim is. Perhaps so. But we do not have to decide the matter here ....").

The Eighth Circuit has not addressed what makes a preemption claim facially conclusive. Other circuits, however, have identified the following scenarios where preemption claims are not facially conclusive: (1) when a further factual inquiry is required; (2) when the claim involves a question of first impression; and (3) when the court must conduct a "detailed analysis" of the state statute in question, "including resolving interjurisdictional differences." <u>Colonial Life & Accident Ins. Co. v. Medley</u>, 572 F.3d 22, 27-28 (1st Cir. 2009) (citing <u>Woodfeathers, Inc. v. Washington County, Oregon</u>, 180 F.3d 1017, 1022 (9th Cir. 1999); <u>GTE Mobilnet of Ohio v. Johnson</u>, 111 F.3d 469, 478 (6th Cir. 1997)). When courts have found that preemption was facially conclusive, they merely applied established precedent that easily resolved the preemption issue. See <u>Chaulk Servs., Inc. v. Mass. Comm'n Against Discrimination</u>, 70 F.3d 1361, 1370 (1st Cir. 1995) (holding that under Supreme Court precedent it was "readily apparent" the conduct at issue was subject to the National Labor Relations Act); <u>Gartrell Constr. Inc. v. Aubry</u>, 940 F.2d 437, 441-42 (9th Cir. 1991) (holding that under Ninth Circuit precedent it was "readily apparent" that the state law at issue was preempted

by ERISA).[5]

Here, Baywood fails to cite to any binding precedent that the FLSA preempts the MFLSA, or, more specifically, that the FLSA preempts state regulation of workers who are exempt under the FLSA. In fact, it appears that federal courts may be divided on the issue. Compare Pac. Merch. Shipping Ass'n v. Aubry, 918 F.2d 1409, 1418 (9th Cir. 1990) (holding that preemption from the FLSA did not preempt the state's ability to enforce overtime provision as to seamen), with Coil v. Jack Tanner Co., 242 F. Supp. 2d 555, 559 (S.D. Ill. 2002) (holding that the state's overtime laws as applied to seamen directly conflicted with the exemption of seamen under the FLSA). This division in the federal courts belies Baywood's argument that preemption of the MFLSA is readily apparent.

Baywood also argues that the FLSA clearly preempts the MFLSA because the MFLSA fails to meet the requirements of the FLSA's Savings Clause.[6] Specifically, Baywood argues that the Savings

---

[5] Baywood also cites Norfolk & W. Ry. Co. v. Pub. Utils. Comm'n of Ohio, 926 F.2d 567, 573 (6th Cir. 1991), but in that case the federal statute expressly preempted the state statute. Here, it is undisputed that the FLSA does not expressly preempt the MFLSA.

[6] The Savings Clause states in relevant part:

No provision of this chapter or any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under this chapter ....

6

Clause does not apply because, during the relevant period, the MFLSA set a minimum wage of $6.15 per hour and a forty-eight-hour maximum workweek whereas the FLSA set a minimum wage of $7.25 per hour and a forty-hour maximum workweek.  See 29 U.S.C. §§ 206 (a)(1)©, 207 (a)(1); Minn Stat. §§ 177.24, subdiv. 1(b) (2011), 177.25, subdiv. 1. Defendants reply that the court should focus on the work requirements as applied to companionship services. Under defendants' analysis, the MFLSA provides a higher minimum wage and lower maximum workweek because under the FLSA companionship services are subject to no minimum wage and no maximum workweek.

In order to determine whether the Savings Clause applies to the MFLSA, the court must conduct a detailed analysis as to whether the Savings Clause requirements refer to a state's regulations in general, as argued by Baywood, or as applied to the specific class of workers at issue, as argued by defendants. As a result, it is not readily apparent that the FLSA preempts the MFLSA. In the absence of a readily apparent preemption of the MFLSA, the court finds that the State has a strong interest in its ability protect workers by enforcing its wage and labor laws. See Massachusetts v. Morash, 490 U.S. 107, 119 (1989) (citation and internal quotation marks omitted) ("The States have traditionally regulated the payment of wages .... Absent any indication that Congress intended [otherwise], we are reluctant to ... significantly interfere with

---

29 U.S.C. § 218(a).

the separate spheres of governmental authority preserved in our federalist system.").

Baywood next argues that Younger abstention is inappropriate because the DLI proceeding is not a type of exceptional case to which abstention applies. Younger abstention is appropriate only in exceptional cases, which include "[1] state criminal prosecutions, [2] civil enforcement proceedings, and [3] civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." Sprint Commc'ns, Inc. v. Jacobs, 134 S. Ct. 584, 588 (2013) (citation and internal quotation marks omitted). The Younger doctrine applies to civil enforcement proceedings only if the civil enforcement is similar to a criminal prosecution.[7] Id. at 592. A civil enforcement proceeding is similar to a criminal prosecution when a state actor initiates a proceeding that seeks to sanction the federal plaintiff. See id. Further, in such proceedings, "investigations are commonly involved, often culminating in the filing of a formal complaint or charges." Id.

Baywood contends that the DLI proceeding is insufficiently akin to a criminal prosecution. The court is not persuaded. Here, the DLI proceeding meets all three indicia of a criminal proceeding: the civil enforcement action was "brought by the State

---

[7] It is undisputed that the DLI proceeding does not fall into the first or third category of cases.

in its sovereign capacity" in order to sanction Baywood after an investigation which culminated in charges against it. Trainor v. Hernandez, 431 U.S. 434, 444 (1977).

Baywood responds that, because DLI has not sought criminal sanctions, the enforcement action is more akin to civil suits brought by employees to recover unpaid wages than a criminal enforcement proceeding. But the Younger doctrine does not require that the State seek criminal penalties in addition to civil enforcement. See Trainor, 431 U.S. at 444 (applying the Younger doctrine to a state civil enforcement action to recover fraudulent obtained welfare payments where the state "also had the option of vindicating these policies through criminal prosecutions"); see also Ohio Civil Rights Comm'n v. Dayton Christian Sch., 477 U.S. 619, 627-29 (1986) (holding abstention was appropriate in a state-initiated civil proceeding to enforce civil rights laws); Moore v. Sims, 442 U.S. 415 (1979) (state-initiated civil proceeding to gain custody of allegedly abused children). As a result, the civil enforcement proceeding against Baywood is akin to a criminal prosecution, and abstention is appropriate.

**II. Summary Judgment**

Because the court abstains from exercising jurisdiction, it denies Baywood's motion for summary judgment as moot.

9

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. Defendants' motion to dismiss [ECF No. 8] is granted;

2. Plaintiff's motion for summary judgment [ECF No. 10] is denied as moot; and

3. The case is dismissed without prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 27, 2017

                                                  s/David S. Doty
                                                  David S. Doty, Judge
                                                  United States District Court